IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| **MARTRELL HOLLOWAY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 1:19-cv-00065 |
| | ) |
| **KEVIN GENOVESE, et al.,** | ) JUDGE CAMPBELL |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Martrell Holloway, an inmate at Turney Center Industrial Complex, filed this pro se civil rights action under 42 U.S.C. § 1983 against Warden Kevin Genovese, Assistant Warden Clinton Denning, FM Sylvan, Turney Center Maintenance, and Medical Director Roy Germano. (Doc. No. 1 at 2–3, 12). Plaintiff also filed an application to proceed in this Court without prepaying fees and costs (Doc. No. 2) and a motion to appoint counsel (Doc. No. 7).

## I. APPLICATION TO PROCEED AS A PAUPER

The Court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). The inmate trust account statement attached to Plaintiff's in forma pauperis application reflects that he cannot pay the full filing fee in advance. (Doc. No. 2 at 3–7). Accordingly, Plaintiff's application (Doc. No. 2) will be granted, and the $350.00 filing fee will be assessed as directed in the accompanying Order. 28 U.S.C. § 1915(b)(1).

## II. INITIAL REVIEW

Under the screening requirements of the Prison Litigation Reform Act ("PLRA"), the Court must review and dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant. 28 U.S.C. §

1915A. The Court must also construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the factual allegations as true unless they are entirely without credibility, *see Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

**A.     Factual Allegations**

Plaintiff submitted a complaint (Doc. No. 1) and supplemental letter (Doc. No. 6). The Court has considered these filings together and established the following summary of allegations for the purpose of conducting an initial review.

   1. Light Fixture Incident

Plaintiff's cell was in the Turney Center Annex. (Doc. No. 1 at 13). In early June 2019, Plaintiff told Sergeant Brady that the ceiling in his cell leaked when it rained. (*Id.*). On the morning of July 6, 2019, Plaintiff alleges that a light fixture fell on his leg due to the unrepaired leak. (*Id.*). In a statement attached to the complaint, Plaintiff also alleges that this light fixture was "improperly installed." (*Id.* at 21). According to Plaintiff, no one has been "held accountable" for this incident, and Warden Genovese hired an outside contractor named FM Sylvan. (*Id.*).

As a result of this incident, Plaintiff suffered "severe" pain in his right knee and lower back. (*Id.* at 5, 13). He told several officers about his injuries, and they carried him to the operations office to be seen by nurses. (*Id.* at 13–14). The nurses told Plaintiff he needed to go to the main compound clinic. (*Id.* at 13). The officers picked Plaintiff up and put him "in the passenger seat of a 'gater' with no straps or seat belts." (*Id.* at 14). This caused Plaintiff more back pain. (*Id.*). At the clinic, someone "started bending [Plaintiff's] knees," told Plaintiff he was fine, and sent him back to the Annex. (*Id.*). The officers took Plaintiff back to the operations office, and Assistant

Warden Clinton Denning told everyone to leave except for Plaintiff. (*Id.*). Denning tried to bribe Plaintiff to "forget about the whole ordeal," but Plaintiff laughed and then Denning left. (*Id.*).

On July 7, 2019, Plaintiff put in a sick call request, and he was seen by medical staff the next day. (*Id.*). Plaintiff was given a pair of crutches for one week, an elastic bandage, and some Tylenol. (*Id.*). On July 9, Plaintiff underwent an x-ray. (*Id.*). On July 14, Plaintiff submitted another sick call request, and he was seen the next day. (*Id.* at 15). Medical staff allowed him to keep one crutch for another week. (*Id.*). On July 16, Plaintiff put in a third sick call request because the medical staff had not done "anything for [his] pain." (*Id.*). The next day, a doctor ran tests and diagnosed Plaintiff with a bruised nerve in his lower back, as well as a "hurt knee." (*Id.*). The doctor prescribed a muscle relaxer, to be taken twice daily. (*Id.*). The doctor also restricted Plaintiff from participating in physical activities and sleeping on a top bunk. (*Id.*).

Plaintiff alleges that he filed grievances on July 8 and 15, 2019, but they were not answered. (*Id.* at 16). According to Plaintiff, prison administrators ignore the Tennessee Department of Correction ("TDOC") grievance policy. (*Id.*). Indeed, Plaintiff alleges that Turney Center staff members laugh at inmates who mention filing a grievance, because staff "know[s] it won't see the ligh[t] of day." (*Id.* at 17). Finally, Plaintiff also alleges that, due to "overwhelming nepotism," there is an "epidemic of atrocities being inflicted upon Black inmates [at Turney Center] that are beyond mindboggling." (*Id.* (internal quotation marks omitted)).

2. Disciplinary Conviction

Plaintiff was also the subject of a disciplinary report dated August 5, 2019, stating that Plaintiff was involved in a "possible altercation" with two other inmates. (Doc. No. 6 at 3). On the morning of August 5, Plaintiff was placed in segregation pending investigation. (*Id.* at 1, 3). According to another disciplinary report, dated August 7 and prepared by Dustin Mackin, the

investigation determined that Plaintiff and two other inmates "were involved in a physical altercation." (*Id.* at 6). All three inmates were charged with fighting. (*Id.*).

On August 9, 2019, Plaintiff had a disciplinary hearing and maintained that he was not guilty (*id.* at 9), but the disciplinary committee found him guilty (*id.* at 8). Plaintiff alleges that he was not guilty because his disciplinary conviction was based on confidential information unsupported by independent evidence, such as photographs, camera footage, or bruising. (*Id.* at 1). Plaintiff also alleges that this disciplinary conviction, and his inability to talk a legal helper, was a "sly form of retaliation" by Turney Center staff. (*Id.*).

**B.      Standard of Review**

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under the PLRA, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**C.      Discussion**

"To prevail on a cause of action under § 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting

under the color of state law.'" *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 736 (6th Cir. 2015)).

      1. Improper Defendants

Two defendants are not proper parties under Section 1983. First, Plaintiff alleges that Defendant SM Sylvan is an outside contractor hired to perform maintenance at Turney Center. While "a private entity that contracts to perform traditional state functions may [] be sued pursuant to [Section] 1983," *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) (citations omitted), Plaintiff does not provide any specific allegations about what, if anything, FM Sylvan has actually done at the prison. Thus, Plaintiff has not alleged that FM Sylvan is "acting under color of state law" for the purpose of Section 1983. *See McCormick v. Kendra*, No. 4:16-CV-P17, 2017 WL 1424805, at *8 (W.D. Ky. Apr. 20, 2017) (finding that two companies alleged to have performed construction at a jail were not state actors under Section 1983). Second, Plaintiff names Turney Center Maintenance as a defendant, but a collection of employees at a correctional facility, considered as a group, is not a "person" for the purpose of Section 1983. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 356 (6th Cir. 2006) (concluding that prison "medical departments are not 'persons' under § 1983"). Plaintiff therefore cannot state a claim against "Turney Center Maintenance" as a matter of law. These two defendants will be dismissed.

      2. Dismissal of Official-Capacity Claims

Next, the Court notes that Plaintiff brings this action against the Defendants in both their individual and official capacities. (Doc. No. 1 at 2, 12). He alleges that the three remaining Defendants—Warden Genovese, Assistant Warden Denning, and Dr. Germano—are TDOC employees. (*Id.*). "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473

U.S. 159, 165 (1985)). Thus, Plaintiff's official-capacity claims are essentially claims against the TDOC. The TDOC is an "agenc[y] of the state of Tennessee" that is "entitled to Eleventh Amendment immunity from suit for damages." *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 454 (6th Cir. 2012) (internal citations omitted). Here, Plaintiff seeks only monetary damages (Doc. No. 1 at 18–20), and so he fails to state a claim upon which relief may be granted against the Defendants in their official capacities.

        3. <u>Dismissal of Remaining Defendants</u>

Plaintiff also fails to state an individual capacity claim against the three remaining Defendants. As to Warden Genovese and Medical Director Germano, Plaintiff does not allege that they personally participated in any misconduct against him in the body of the complaint. To the extent that Plaintiff seeks to hold them liable based on their supervisor positions, "Section 1983 liability must be premised on more than . . . the right to control one's employees." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). A claim against a supervisor "must fail . . . unless 'the supervisor encouraged [a] specific incident of misconduct or in some other way directly participated in it.'" *Cardinal v. Metrish*, 564 F.3d 794, 802–03 (6th Cir. 2009) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002)). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* at 803 (quoting *Combs*, 315 F.3d at 558).

Here, Plaintiff's only specific allegation against Defendant Genovese is that he hired an outside contractor (Doc. No. 1 at 21), while there are not any specific allegations against Defendant Germano—his name is merely stamped on some medical documentation attached to the complaint (*id.* at 24, 27, 29). This does not reflect the type of "direct participation" necessary for liability

under Section 1983. As to Assistant Warden Denning, Plaintiff alleges that he attempted to bribe Plaintiff to "forget about the whole ordeal" after a light fixture fell on Plaintiff's leg. Even accepting this allegation as true, it does not reflect that Denning was personally involved in the underlying incident itself. Plaintiff simply fails to allege that Denning directly participated in any unconstitutional conduct, and so Plaintiff fails to state a claim against him as well.

4. Failure to State a Claim

Even considering the specific allegations regarding the underlying incidents in the complaint, however, Plaintiff still fails to state a claim.

First, Plaintiff alleges that he told a Turney Center sergeant that the ceiling in his cell leaked when it rained, and no one did anything about it. About a month later, Plaintiff alleges, a light fixture from the ceiling fell on his leg. The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (citations omitted). To state a conditions-of-confinement claim, a plaintiff must satisfy "both an objective and a subjective component." *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). For the objective component, a plaintiff must "demonstrate that he has been subjected to specific deprivations that are so serious that they deny him 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs." *Id.* (citing *Farmer*, 511 U.S. at 834).

Here, Plaintiff does not provide any details about how the leak affected the conditions of his cell prior to the light fixture falling down. Thus, the Court cannot conclude that this leak resulted in objectively inhumane conditions of confinement during this time. And even assuming

7

that the light fixture falling on Plaintiff's leg constituted objectively inadequate shelter under the Eighth Amendment, Plaintiff does not allege that any prison official had the subjective state of mind necessary to state a claim for this incident. That is, while Plaintiff allegedly informed a Turney Center sergeant about the leak, he does not allege that it was obviously apparent that failure to repair the leak would result in a heightened risk to Plaintiff's safety. At most, therefore, Plaintiff's allegations reflect negligence on the part of Turney Center staff, not the deliberate indifference required to state an Eighth Amendment claim. *See Ross v. Duggan*, 402 F.3d 575, 590 n.7 (6th Cir. 2004) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388–92 & n.7 (1989)) ("'Deliberate indifference' is a very high standard of culpability, exceeding [even] 'gross negligence.'"). Plaintiff fails to state a claim for inadequate conditions of confinement.

Next, Plaintiff alleges that he received inadequate medical care after the light fixture fell on him. The Eighth Amendment establishes the right for inmates to receive adequate medical care. *Winkler*, 893 F.3d at 830 (citing *Phillips v. Roane Cty.*, 534 F.3d 531, 539 (6th Cir. 2008)). The objective component of this claim requires an inmate to allege "the existence of a sufficiently serious medical need," *id.* (citing *Spears*, 589 F.3d at 254), and the subjective component requires allegations that a defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 891 (quoting *Farmer*, 511 U.S. at 837).

Here, the Court assumes that Plaintiff's alleged back and knee pain was a sufficiently serious medical need, but Plaintiff does not satisfy the subjective component of this claim. Plaintiff acknowledges that he received medical treatment following this incident, including being issued crutches, getting an x-ray, and being given Tylenol and muscle relaxers. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims

8

which sound in state tort law." *Darrah v. Krishner*, 865 F.3d 361, 372 (6th Cir. 2017) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). "As a general rule, a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Id.* (citing *Estelle*, 429 U.S. at 107). Moreover, "the subjective component of a deliberate indifference claim must be addressed for each officer individually." *Winkler*, 893 F.3d at 891 (quoting *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008)). And here, Plaintiff does not explain how any particular Turney Center staff member was involved in the alleged provision of inadequate medical care. Accordingly, Plaintiff fails to state a claim for inadequate medical care under the Eighth Amendment.

Plaintiff also alleges that he was not allowed to talk to a legal helper prior to a disciplinary hearing in August 2019, and that he is not guilty of the subsequent disciplinary conviction he received. Prisoners "may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citations omitted). To state a procedural due process claim, however, a prisoner must first satisfy the threshold requirement of alleging "a constitutionally protected interest." *Pickelhaupt v. Jackson*, 364 F. App'x 221, 224 (6th Cir. 2010) (citing *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005)). And while prisoner may have a liberty interest in avoiding conditions of confinement that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Wilkinson*, 545 U.S. at 223 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)), Plaintiff does not provide any detail whatsoever about the consequences of his disciplinary conviction—much less establish that the conviction resulted in an "atypical and significant hardship." Accordingly, Plaintiff does not satisfy the threshold burden of establishing that his disciplinary conviction implicated a constitutionally protected interest. For this reason, Plaintiff fails to state a procedural due process claim.

Finally, Plaintiff fails to state a claim based on allegations that his grievances went unanswered "because there is no inherent constitutional right to an effective prison grievance procedure." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (collecting cases). Nor can Plaintiff state a claim based on his isolated references to discrimination and retaliation. He alleges that there is an "epidemic of atrocities being inflicted upon Black inmates" at Turney Center, and that his disciplinary conviction was a "sly form of retaliation." These allegations are entirely unsupported by facts, and therefore insufficient to state a claim. *See Wingo*, 499 F. App'x at 455 (finding that a prisoner's "allegation of retaliation [was] conclusory and insufficient to state a claim because he set forth no facts which would support his contention that the defendants were motivated by retaliation").

### III. CONCLUSION

For these reasons, Plaintiff's application to proceed in forma pauperis will be granted, this action will be dismissed for failure to state a claim under Section 1983, and Plaintiff's motion to appoint counsel will be denied as moot. The dismissal of this action will be without prejudice to Plaintiff's ability to file any state law claims raised in the complaint in state court, although the Court makes no representations regarding the viability of any state law claims.

The Court will also certify that any appeal in this matter would not be taken in good faith, so Plaintiff will not be granted leave to proceed as a pauper on any appeal. 28 U.S.C. § 1915(a)(3).

The Court will enter an appropriate Order.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE